Ades *et al. v.* Levi *et al.*

Filed May 15, 1894.

———————◆———————

No. 17,194.

ADES ET AL. *v.* LEVI ET AL.

PLEADING.—*Complaint, Defective.*—*Cured by Verdict.*—*Supreme Court Practice.*—*Presumption.*—After verdict, the complaint will be supported by every intendment, if there is nothing in the record to prevent it; and where the complaint is not demurred to, which would be insufficient on demurrer, any defect in the complaint which might have been cured by amendment will be cured by verdict, and the appellate tribunal will presume such amendment to have been made.

INJUNCTION.—*To Protect Rights of Mortgagee.*—*Threatened Sale of Mortgaged Property.*—*Equity.*—Threatened injury to the rights of mortgagees in the mortgaged property may be enjoined. So, where mortgaged property in the hands of an assignee is threatened to be sold, to the injury of the mortgagee, the threatened sale may be enjoined until the debt secured by the mortgage becomes due.

ASSIGNMENT.—*Of Mortgaged Property.*—*Rights of Assignee, of Mortgagee.*—The assignee takes the property assigned with no greater rights than was possessed by the assignor, and subject to the rights and remedies of the mortgagee in the property assigned; the mortgagee having the right to enforce their claim in the courts of the county where the property is situate and the mortgage is recorded.

Ades *et al. v.* Levi *et al.*

JUDGMENT.—*When Will Not be Reversed.—Correct Result.*—Where it
does not appear from the record that any of the appellants' rights
were abridged or lost to them, but the record shows that all the
parties were before the court; that the facts were all before the
court, and that the appellants had the full benefit of them, the judg-
ment will not be reversed.

From the Lawrence Circuit Court.

*S. C. Davis, A. B. Felsenthal, G. W. Faris* and *S. R.
Hamill,* for appellants.

*J. D. Alexander,* for appellees.

DAILEY, J.—This is an appeal from an interlocutory
order of the Lawrence Circuit Court, which was made
and entered of record on November 21st, 1893. The
record in this case discloses the following facts: On Oc-
tober 27th, 1893, appellees filed their complaint in said
court to restrain and enjoin the appellants from selling a
certain stock of goods therein described which was em-
braced in a chattel mortgage executed by appellants to
appellees on October 10th, 1893. On October 27th, 1893,
the court granted a temporary injunction, by the terms
of which appellants were enjoined from selling the stock
of goods mentioned in the complaint. On November
7th, on motion of appellants, the temporary injunction
was dissolved. Thereupon the court granted a tempo-
rary restraining order, by the terms of which the appel-
lants were enjoined from selling the stock of goods in
controversy until the further order of the court, and the
appellants were notified that the appellees would apply
for a temporary injunction on the 21st day of November,
1893.

The questions involved in this appeal arise from the
action and rulings of the court in reference to the re-
straining order, inasmuch as the ruling of the court on
the original temporary restraining order is not com-
plained of by either party. On November 21st, 1893,

appellees entered a special appearance and moved the court to set aside the restraining order granted on November 7th, and the returns of the sheriffs thereto, which motion was overruled, and appellants properly excepted. The questions arising on this motion are saved by appellants' bill of exceptions number one. Appellants' motion to set aside the order and returns of the sheriffs thereto was overruled; appellees moved the court to grant a temporary injunction, and in support of this motion submitted their verified complaint and the affidavits of appellees and one Lee Wolf. In opposition to said application and motion, appellants submitted the affidavits of Mayer Ades and Isaac Torner. The court sustained the motion and application of appellees, and thereupon granted a temporary injunction until the final hearing of the cause or the further order of the court, to which the appellants excepted.

The questions arising upon the rulings of the court upon this application and motion are saved by appellants' bill of exceptions number two. It will be seen that appellants complain of the action of the court in overruling the motion made upon their special appearance to set aside the restraining order granted November 7th, 1893, and the returns of the sheriffs thereto. They further complain of the action of the court below in granting the temporary injunction, which was applied for on November 21st, 1893. In addition, the appellants assert that the court below had no jurisdiction over the subject matter of the action, and that the complaint does not state facts sufficient to constitute a cause of action. The errors assigned are as follows:

1st. The court erred in overruling appellants' motion to set aside the restraining order issued on the 7th day of November, 1893.

2d. The court erred in overruling the motion of ap-

pellants to set aside the returns of the sheriffs to the order issued on November 7th, 1893.

3d.  The court erred in issuing and granting the temporary injunction issued on the 21st day of November, 1893.

4th.  The court below had no jurisdiction over the subject-matter of the action.

5th.  The complaint does not state facts sufficient to constitute a cause of action.

The first two errors specified, we will consider together. The appellants cite no authority in favor of their proposition, but refer to the returns.  That of the sheriff of Vigo county reads:  "I served this writ as commanded on the within named defendants, Israel B. Ades, Mayer Ades, and Isaac Torner, assignee, by reading the same to and within each of their hearing this 11th day of November, 1893.  James W. Stout, sheriff."

The return by the sheriff of Lawrence county is: "Served by reading to and within the presence and hearing of Mayer Ades, and by leaving with him a true and certified copy of the same, this November 8th, 1893. George W. Holmes, sheriff, etc."

The appellants show that on the 21st day of November, 1893, being the second judicial day of November term, 1893, of the Lawrence Circuit Court, the appellees filed therein certified copies of the orders issued by the court on November 7th, 1893, together with the returns in relation thereto made by the sheriffs of the counties of Vigo and Lawrence.

There can be no doubt that the return of the sheriff of Lawrence county was good on Mayer Ades, and it is not controverted that he was one of the firm of Israel B., Samuel, and Mayer Ades, known as the "Ades Bros.," and from the returns he was served both by the sheriffs of Vigo and Lawrence counties.  Appellants admit that

the restraining orders were issued to the sheriffs of both counties, and that the one issued to the sheriff of Vigo county was served on them by reading, but urge that their motion in the court below should have been sustained, for the reason that the return of the sheriff of Vigo county does not show that he left with them a certified copy of the restraining order. They filed an affidavit to show this was not done, and all appeared specially to set aside the return for that reason.

As said before, the record shows that such a copy was delivered to Mayer Ades by the sheriff of Lawrence county November 8, 1893, and he was included in the return of the sheriff of Vigo county three days later. So, according to the returns, he was in the former county on November 8, 1893, and in the latter on November 11, thereafter, and it is fair to presume, being one of the defendants and one of the partners who had made the assignment to Torner in Vigo county, he had gone there about this very matter, and had been served with a certified copy of the restraining order before he left.

Appellants' objection to the service is quite technical, and ought not to prevail if the substantial rights of the parties have not been invaded. It is a familiar rule that if there was any error in the court below, this court will not reverse the judgment where it appears from the record that the substantial rights of the parties have not been prejudiced, and that the judgment of the court was right, and the error, if any, was harmless. *Souser v. Cunningham,* 21 Ind. 200; *McCullough v. Rice,* 59 Ind. 580; *McGee v. State, ex rel.,* 103 Ind. 444; *Cleveland, etc., R. R. Co. v. Newell,* 104 Ind. 264; *Davis v. Reamer,* 105 Ind: 318; *Nixon v. Campbell,* 106 Ind. 47; *Kepler v. Conkling,* 89 Ind. 392.

The third, fourth, and fifth assignments of error may be considered together.

Ades *et al. v.* Levi *et al.*

It is alleged in the complaint, that on the 10th day of October, 1893, the appellants, "Ades Bros.," executed to the appellees a chattel mortgage on their stock of goods in Bedford, Indiana, to secure them in the payment of an account, for goods, wares, and merchandise sold and delivered theretofore by the appellees to the appellants, which mortgage duly recorded the same day; that said mortgage contained the provision that said "Ades Brothers" should retain the possession of said goods, until said account secured became due, and if not promptly paid, aes then to have the right to take immediate possession the goods and keep possession thereof without access of law, the same to become the absolute property the appellees; that the said "Ades Brothers" agreed re the said property from the place where the same then were, without the consent of the appellees, nor to sell, assign, or lease the same without their consent, and in default of any of these conditions, or if the property should come into the hands of an assignee to be sold, the appellees had the right under their mortgage to take immediate and unconditional possession of the same for their own use; that on the 14th day of October, 1893, the appellants, Ades Brothers, made an assignment for the benefit of their creditors, to their co-appellant Torner, and on said day said Torner, as assignee, took possession of all of said goods so mortgaged.

They further allege that the account so secured by their said mortgage would not be due until December 1, 1893, when they could proceed to foreclose the same; that on the 26th day of October, 1893, the assignee caused to be published in the "Bedford Mail," a daily newspaper, printed and published in said city, a notice styled "Assignee's Sale," advertising the entire stock of goods embraced in said mortgage, saying: *"The goods*

*would be sold for what they would bring*—that *one-third value in cash would buy any of these goods.*"

Appellees alleged that the stock of goods so mentioned in said advertisement was a part and parcel of the goods described in the mo[rtga]ge, and included the goods sold and delivered by [appe]llees to the appellants, "Ades Brothers," and, fu[rther,] alleging that unless the appellants were restrain[ed and] enjoined, they would sell all of said property at le[ss than] its true cash value, at retail, to whomsoever wo[uld,] and when appellees' account would mature and [wo]uld foreclose their mortgage, all of said proper[ty woul]d be gone and their suit unavailing. A copy [of the] mortgage is made a part of the complaint.

It is insisted b[y appe]llants' counsel that the complaint is not good because it fails to state "that appellees will suffer irreparable damage," and for the further reason that no time is stated in the mortgage as to when the account secured thereby would be due. But it is stated in the complaint when it would be due. These are all the objections urged to the sufficiency of the complaint.

In determining the sufficiency of a complaint, courts are guided by the facts averred. We think, however, the appellants are not in a situation here to successfully challenge its sufficiency at this time. It is shown by the record, that appellants never demurred to the complaint, but filed their answer in general denial thereto.

In Elliott's App. Proced., section 471, it is said: "The general rule that objections not presented to the trial court are unavailing on appeal applies, with one important exception, to pleadings. It would seem, on principle and independent of statute, that where a complaint or declaration wholly fails to state a cause of action the judgment should not be allowed to stand, for it is diffi-

cult, if not impossible, to conceive how a judgment can stand where there is no actionable wrong, and, surely, there can be none where there is no cause of action. An unsupported judgment is as a foundationless structure. The reason of the rule does not, however, exist where there is simply a formal and unsubstantial defect in the complaint or declaration, or a defect that can be supplied by amendment, since such defects may well be deemed to be cured by the verdict.''

In section 481, the author says: ''There is solid reason for the general rule that a party who litigates questions without presenting objections to the pleadings * * * shall not be heard on appeal to urge * * * that they were not sufficient, and a departure from this rule would cause almost endless and hopeless confusion. * * * It is required by the general doctrine that the court of last resort should not be required to decide a question that has not been passed upon by the trial court, since any other holding would in effect make the appellate court one of original jurisdiction. The true theory is that there must be a decision by a court of original jurisdiction to be reviewed by the appellate tribunal, for unless this be so, the appellate court becomes a trial court.''

It has been held by this court that ''a pleading which is insufficient on demurrer may, in some instances, in the absence of a demurrer, be cured by the verdict.'' *Shaw* y. *Merchants' Nat'l Bank*, 60 Ind. 83; *Indianapolis, etc., R. R. Co.* v. *McCaffery*, 72 Ind. 294.

After the verdict, the complaint will be supported by every intendment, if there is nothing in the record to prevent it. *Parker* v. *Clayton*, 72 Ind. 307; *Parker* v. *Clayton*, 51 Ind. 126.

Applying these principles to the case under consider-

ation, there is nothing in the objections interposed by counsel.

The following is a summary of the events: October 10, 1893, the mortgage was executed and recorded. October 14, 1893, the assignment was made. October 26, 1893, the notice of sale by the assignee, in the Bedford *Mail*, was given. November 7, 1893, the restraining order was granted and issued. November 22, 1893, time was fixed for the hearing. November 8, 1893, the restraining order was served on the appellees. October 21, 1893, the assignee was granted an order by the Vigo Circuit Court to sell the stock of goods at Bedford, Indiana, at retail, at not less than their appraised value. October 26, 1893, notice was published in the Bedford *Mail*, that the assignee would sell the same at one-third their appraised value. November 18, 1893, after this action was commenced, and after service of the restraining order, the assignee filed a petition, in the Vigo Circuit Court, showing that certain mortgages, including the one due the appellees, had been executed by the assignors, and asking permission to pay off the same. On November 18, 1893, the order was granted as prayed for.

It seems that the stock of goods at Bedford was of the value of about $4,000. The mortgages on the same, according to appellants' showing, were as follows: To L. Grossman, $1,647.88; L. Ades, $1,271.83; Levi, Newberger & Co. (appellees), $575; Felsenthal & Davis, $500, making, in the aggregate, $3,994.71.

It thus appears that if these goods were sold for one-third their value, as advertised, there would not have been realized from the sale enough to pay off the first mortgage, and the security of the appellees would have been worthless, as the two mortgages on the goods, senior to that of the appellees, amounted to $2,919.71.

In view of these facts, shown by the record, it will not do to say the appellees had no right to invoke a court of equity to interpose in their behalf, or that none of their rights were threatened or invaded. If the account secured by the mortgage to the appellees had been due, and they had brought an action to foreclose their mortgage, the court would have enjoined the assignee from any attempt to either sell or remove the goods pending the action.

Equity will enjoin a threatened injury to the rights of the mortgagee. Jones on Chat. Mort., section 450.

The assignee has no greater rights than his assignors, and mortgagees have a right to enforce their claim in the courts of the county where the property is located and where the mortgage is recorded.

When mortgagors make an assignment, they can transfer no other or greater interest than they possessed at the time of the assignment, and had the right to enforce. If there had been no assignment of the goods by, the "Ades Brothers," and they had advertised to sell them at one-third their cash value, there can be little doubt the appellees could enjoin the sale. The fact that the goods have passed into the hands of a trustee does not change the principle.

It is the contention of appellants' counsel, that the Lawrence Circuit Court had no jurisdiction in the matter, for the reasons that the assignment had been made in Vigo county, the assignee resided therein, and proceedings were pending in the Vigo Circuit Court. This is upon the theory that one court can not control the execution, orders, and process of another court.

In *Gilbert, Assignee,* v. *McCorkle,* 110 Ind. 215, it is shown that Conrad Miller and Jacob Miller were partners, doing business under the firm name of "Miller Brothers," in the city of Evansville, Indiana, and, be-

ing in a failing condition, executed a mortgage, on March 29, 1886, upon all the property, real and personal, to secure certain of their creditors.    On March 30, 1886, the Millers made an assignment, in the circuit court of Vanderburgh county, for the benefit of their creditors. Gilbert was named and qualified as assignee.    An action was commenced on April 12, 1886, in the superior court of said county, to foreclose said mortgage.    The assignee was made a defendant to the proceeding, and the other creditors, whose claims were not secured by the mortgage, became parties on their own application.    It was contended that the circuit court had exclusive jurisdiction of the assignee and the property, and, for that reason, the superior court of Vanderburgh county had no jurisdic‹ tion of the subject-matter.    The court said.    "It has been settled by the decisions of this court, that where property, which has been subject to the lien of an execu‐ tion, is afterwards assigned, such property may neverthe‐ less be seized, and taken out of the possession of the as‐ signee by virtue of such prior lien."    *Griffin* v. *Wallace,* 66 Ind. 410;  *Marsh* v.  *Vawter,* 71 Ind. 22;  *Woolson* v. *Pipher,* 100 Ind. 306.

"The assignment carries only the assignor's interest in the property assigned, and does not affect the prior vested rights or remedies which a good faith lien‐ holder may have therein.    The assignee takes the prop‐ erty assigned subject to the encumbrance of the mortgage, and subject to all the rights and remedies of the mort‐ gagees," citing *Recker* v. *Kilgore,* 62 Ind. 10.

"It was competent for the assignee to have made ap‐ plication to the court in which the assignment was pending, for leave to pay off the encumbrance out of the general fund, or to have sold the property under the or‐ der of the court, subject to liens.    But neither the as‐ signment, nor the proceeding which the assignee might

have taken thereunder, could impair or postpone any remedy which the prior mortgagees might have availed themselves of against the assignors."

Section 2674, R. S. 1881, provides, in substance, that where property has been assigned, before the holder of any lien or encumbrance thereon shall be entitled to receive any part of his debt out of the general fund, he shall proceed to enforce the payment of his debt, by sale or otherwise, of the property on which such lien encumbrance exists.

This section recognizes the right of a lien-holder to proceed by the usual and appropriate methods to enforce his lien. The authority of the court in which an assignment is pending concerning the sale and disposition of the property assigned is distinctly marked out by the statute. In respect to property which is subject to prior liens when it comes under its jurisdiction the court may order that it be sold subject to the liens, or it may order that the liens be paid off out of the general fund. The statute does not, however, confer exclusive jurisdiction upon the court having control of the assignment to enforce the ordinary common law or other independent remedies of those who have antecedent rights in or liens upon the property which are in no way affected by the assignment. So the appellees, having a lien, proceeded as any other lien holder would have done to protect the property upon which the lien existed, until his debt secured thereby had become due. It is said the assignee had received an order to sell the goods mortgaged, and, by reason of this fact, the appellees were bound by the action of the Vigo Circuit Court, and could do nothing, but in *Recker* v. *Kilgore, supra,* it is said: "The assignee takes the property assigned subject to the encumbrance of the mortgage and subject to all the rights and remedies of the mortgagees."

Ades *et al. v.* Levi *et al.*

It does not appear from an examination of the entire record, that any of the appellants' rights were abridged or lost to them, but the whole record shows that all the parties were before the court, filed their answer in general denial, submitted their affidavits in opposition to those offered by appellees; that all the facts were before the court, so that the appellants had the full benefit of them.

Section 398, R. S. 1881, provides that the court must, in every stage of the action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party, and no judgment can be reversed or affected by reason of such error or defect. Also, no judgment shall be stayed or reversed in whole or in part by the Supreme Court for any defect in form, variance, or imperfections contained in the record, pleadings, process, entries, returns, or other proceedings therein which by law might be amended in the court below, but such defects shall be deemed to be amended in this court. Nor shall any judgment be stayed or reversed in whole or in part, where it shall appear that the merits have been fairly tried and determined in the court. In our opinion, there are no errors in the record for which the cause ought to be reversed.

The judgment is affirmed.

Filed April 26, 1894.